## JOE S. THORNTON v. THE STATE.

No. 20304. Delivered April 12, 1939.

The opinion states the case.

*Wiley B. Thomas*, of Groveton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Appellant was convicted for theft of hogs from Vard Skaines, and punishment assessed at two years in the penitentiary.

Skaines had a large number of hogs which ran on the open range in Trinity County. Fifty-three head of the hogs ran in one bunch. They were marked crop and two splits in the left ear and crop and under half crop in the right ear. About January 20th, 1938, Skaines missed twenty head of hogs which were a part of the bunch of fifty-three. On Friday, January 21, 1938, Mr. Rosenthall, who was in the packing business in Beaumont, brought from appellant twenty head of hogs, paying for them by check which appellant cashed at the bank. Jimmie Lee was with appellant when the hogs were sold by appellant and delivered at the packing plant. On the following Sunday Skaines in company with Lee and others went to the packing plant and found seven hogs which had been dressed, the heads not having yet been cut off, and the marks in the ears corresponded to those on the stolen hogs. He also found five heads which had already been severed from the bodies, and the ears on these heads also bore marks corresponding with those of the hogs lost by Skaines. Lee testified that about dark on the 20th of January Sam Mayo and Jess Lynch penned twenty-one head of hogs in a pole pen in the woods and that Mayo sent witness to get appellant to come with his truck and haul the hogs. Witness testified that as far as he knew appellant had nothing to do with penning the hogs. Witness helped appellant load the hogs, went with him to Beaumont and aided in unloading the hogs at the packing plant. He said there were twenty-one hogs in the pen, but they only loaded twenty, "cutting one back." About a week after appellant was charged with the theft of the hogs he had a conversation with Mr. Lister in which he told Lister "that the night he and Jimmie Lee loaded the Skaines hogs that he told Jimmie Lee that he had rather have his throat cut than do that kind of business," and later in the same conversation said: "Vard Skaines, the man he got the hogs from was dirty, dirty, dirty."

Considering the evidence together we think there is no merit in appellant's contention that there was no sufficient identification of the hogs found by Skaines at the packing plant as a part of those which had been stolen from him.

Appellant brings forward a complaint that the court declined to charge on circumstantial evidence which omission

we regard as quite serious. To warrant appellant's conviction for theft of the hogs it is essential that the evidence show him to have been connected as a principal with the original taking of the property from the possession of the owner. If the evidence had only shown that recently after the hogs were stolen appellant was found in the personal, exclusive and unexplained possession thereof it would have supported an inference that he was the thief, but even then the case would have been one of circumstantial evidence. Allen v. State, 97 Tex. Cr. R. 467, 262 S. W. 502. However, the testimony of the State's own witness on cross examination destroyed the inference. Lee says Mayo and Lynch penned the hogs and that so far as witness knew appellant had no connection therewith. So far as the witness Lee is concerned his evidence shows that appellant's first connection with the transaction was after the hogs had been stolen. If in fact he had no connection with the original taking of the hogs, but at the instance of Mayo and Lynch hauled them to Beaumont and sold them with knowledge that they had been stolen he would be guilty of receiving stolen property, but not of stealing it. If appellant did not personally participate in the penning of the hogs—which under the evidence appears to have been the original taking—the only way in which appellant could have been a principal to the theft would have been by reason of a conspiracy or agreement among Mayo, Lynch and appellant whereby Mayo and Lynch were to steal the hogs—appellant not being present—and appellant was then to dispose of them and divide the proceeds among the three. See Smith v. State, 21 Tex. Cr. R. 107, 17 S. W. 552; Simpson v. State, 81 Tex. Cr. R. 389, 196 S. W. 835; Burrow v. State, 85 Tex. Cr. R. 133, 210 S. W. 805; Kolb v. State, 88 Tex. Cr. R. 593, 228 S. W. 210; Walker v. State, 94 Tex. Cr. R. 568, 252 S. W. 552; Snider v. State, 119 Tex. Cr. R. 635, 44 S. W. (2d) 997; Byrd v. State, 117 Tex. Cr. R. 489, 38 S. W. (2d) 332; McInnis v. State, 122 Tex. Cr. R. 128, 54 S. W. (2d) 96; Coy v. State, 131 Tex. Cr. R. 489, 100 S. W. (2d) 1016. Although the evidence shows that the check for the hogs was payable to appellant and that he cashed it there is no evidence as to what he did with the money. If the State was relying on a conspiracy among appellant, Mayo and Lynch which contemplated the theft of the hogs by Mayo and Lynch, in appellant's absence, but that appellant was then to do his part by selling them and dividing the proceeds, certainly the State's case depended on circumstantial evidence. We expressly disclaim any intention to indicate a view as to the sufficiency of the evidence to support the theory mentioned.

If it was thought by the very careful trial court that the case was taken out of the realm of circumstantial evidence by the testimony that appellant had told a witness that he (appellant) said to Lee on the night they loaded and hauled the Skaines hogs that appellant "would rather have his throat cut than do that kind of business," and that "Vard Skaines, the man he got the hogs from, was dirty," we think the court fell into error. The first statement mentioned clearly shows that appellant knew he was dealing with Skaines' hogs, but there is no admission in what capacity he was acting. If the record showed only the unexplained recent possession by appellant of the stolen property his further statement to Lister that Skaines, "the man he got the hogs from," etc. would come close to connecting him with the original taking, but the case must be looked to as a whole to appraise such statement. Unquestionably appellant knew when he loaded the hogs from the pen that they belonged to Skaines and the statement may be referred to that act of appellant rather than to the original taking. The rule is very clearly stated in Branch's Ann. Tex. P. C., with supporting authorities, at page 1341, Sec. 2478, as follows: "Proof of an admission of defendant will not relieve the court from the necessity of charging on circumstantial evidence in a theft case unless the same is an unequivocal admission of the taking of the property by defendant from the possession of the person in whom possession is laid, and if it is only by a process of inference that it can be determined that there is a confession or admission of such taking—the main fact—the court should charge on circumstantial evidence."

We conclude that the court should have responded to appellant's objection and instructed on circumstantial evidence.

The court gave the following instruction: "You are further instructed that in order to convict the defendant in this case, you must believe from the evidence, beyond a reasonable doubt, that the defendant took the hog in question from the possession of Vard Skaines. If any person other than the defendant took the hog and it came into the possession of the defendant after the original taking, then you should acquit the defendant regardless of whether or not he knew said hog had been stolen by another, and, if you have a reasonable doubt upon this point, you will acquit the defendant."

Appellant contends that under the facts the court should have gone further, and by objection pointed out to the court that he should have informed the jury that the original taking was completed when the hogs were placed in the pen, and

unless appellant was connected with such penning he should be acquitted, or in the alternative, to define the term "original taking" for the information of the jury. The instruction given by the court would under ordinary circumstances be sufficient to protect an accused's rights, but under the facts here present where appellant may have taken the hogs into his possession after the "theft taking" was complete we think in view of another trial the court should make it clear to the jury that if someone other than appellant penned the hogs and that appellant in no way participated therein, and that his first connection with the transaction was taking the hogs out of the pen he would not be guilty of theft.

The judgment is reversed and the cause remanded.