# NO. 12-18-00103-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KRYSTAL DAWN MILLER,* *APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Krystal Miller appeals her conviction for burglary of a habitation. In a single issue, Appellant urges the trial court erred in denying her request for an involuntary intoxication instruction in the jury charge. We affirm.

## BACKGROUND

Appellant was charged by indictment with burglary of a habitation. She pleaded "not guilty" and the matter proceeded to a jury trial. Following the presentation of evidence, Appellant requested the trial court include an instruction on involuntary intoxication in the jury charge. The trial court denied the request. The jury subsequently found Appellant "guilty." Following a punishment trial, Appellant was sentenced to sixteen years confinement. This appeal followed.

## CHARGE ERROR

In Appellant's sole issue, she contends the trial court erred when it denied her request for an involuntary intoxication instruction.[1]

---

[1] The State contends that Appellant failed to preserve her complaint for appellate review. Preservation, however, comes into play in a harm analysis should we determine the trial court erred. *See Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). Because we conclude that the trial court did not so err, we need not conduct a harm analysis and, thus, need not address whether error is preserved. *See* TEX. R. APP. P. 47.1.

## Standard of Review

The review of an alleged jury charge error in a criminal trial is a two-step process. ***Abdnor v. State***, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. ***Id.*** Then, if there is charge error, the court must determine whether there is sufficient harm to require reversal. ***Id.*** at 731–32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected to the error at trial. ***Id.*** at 732.

If the appellant objected to the error, the appellate court must reverse the trial court's judgment if the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2007). This means no more than that there must be some harm to the accused from the error. ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. ***Id.*** "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." ***Id.***

The record must show that the defendant suffered actual harm, not merely theoretical harm. ***Id.*** at 174. In assessing whether the trial court erred by denying a requested defensive instruction, an appellate court must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. ***Farmer v. State***, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013).

Generally, a trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The charge must include an instruction on any defensive theory raised by the evidence and properly requested by the defendant. ***Booth v. State***, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). But the trial court has no duty to instruct the jury sua sponte on unrequested defensive issues because they are not "the law applicable to the case." ***Vega v. State***, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). A defendant who fails to preserve his request for a defensive instruction cannot complain about its omission on appeal because he has procedurally defaulted his complaint. ***Id.***

## Involuntary Intoxication Instruction

Involuntary intoxication is an affirmative defense. *See Farmer,* 411 S.W.3d at 911–12 (Cochran, J., concurring); *Torres v. State,* 585 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1979). A defendant is entitled to an instruction on that defense when the evidence shows that she exercised no independent judgment or volition in the taking of the intoxicant, and as a result of her intoxication, she did not know that her conduct was wrong. *See Farmer,* 411 S.W.3d at 912 (Cochran, J., concurring); *Nelson v. State,* 149 S.W.3d 206, 210 (Tex. App.—Fort Worth 2004, no pet.).

Courts have recognized that a person's intoxication can be involuntary when the intoxication arises because of: (1) the fault of another, such as through force, duress, or fraud; (2) the person's own accident, inadvertence, or mistake; (3) a physiological or psychological condition beyond the person's control; or (4) a medically prescribed drug that causes unexpected side effects. *See Farmer,* 411 S.W.3d at 913 (Cochran, J., concurring).

## The Evidence

The evidence at trial showed that Appellant and her sister, Kara Voyles, attended their stepfather's funeral on April 30, 2016. Following the funeral, Appellant and Kara went to Kara's house where Kara's daughter, Ashlyn, was preparing for a school dance. While helping Ashlyn prepare for the dance, both Appellant and Kara consumed "a few beers." After dropping off Ashlyn at the dance, Appellant, Kara, and Kara's husband Kyle attended a crawfish boil. While at the crawfish boil, Appellant consumed more alcoholic beverages, including whiskey from a bottle that was shared with a group of people. The three adults left the crawfish boil at approximately 9:30 p.m. so that they would be home after Ashlyn's dance. While in route to the house, Appellant attempted to jump out of the vehicle. Kyle, who was driving, pulled Appellant back into the car after which she began attacking Kara. Kyle managed to stop Appellant and get her back into her seat. Appellant then successfully jumped out of the vehicle.

Kyle took Kara home so that she would be there when Ashlyn returned, and he went to retrieve Appellant from the side of the road. Appellant was angry and emotional on the ride back to the Voyles's home. After they arrived at the house, she punched Kyle, and he locked her out of the house. Shortly thereafter, a gunshot entered the Voyles's living room window. Kara and Ashlyn took cover in a bathroom and Appellant fired a second shot at the house. Appellant then entered the house through the window she had shot, injuring herself on the glass.

The Voyles hid in the bathroom and called 911. Appellant fired an estimated ten shots while in the house. Kyle opened his gun safe that was in the attached closet and retrieved a gun. He left the bathroom to confront Appellant, who had left the house and was in the front yard. Following another altercation, Kyle restrained Appellant.

Appellant was transported to the hospital for treatment of her injuries. Appellant's blood tests were positive for alcohol and the treating nurse testified that Appellant appeared intoxicated. The nurse further testified that Appellant's records did not indicate that she had been drugged. In addition, Appellant did not suffer from or complain of vision loss, hearing loss, or confusion. Appellant's pupil dilation and heart rate were also normal.

Appellant testified that she drank beer and took her prescription hormones prior to the crawfish boil. She ate chips and salsa at a Mexican restaurant before the crawfish boil and ate a couple of bites of crawfish while at the crawfish boil. Appellant further testified that she and four or five other people drank from a bottle of Fireball whiskey at the crawfish boil. She claimed to have no recollection of any events that transpired after drinking the whiskey, until waking up in the hospital. Regarding her actions after leaving the crawfish boil, Appellant testified that she "had to have been drugged" in order to act the way she did. She further testified that she had not heard whether anyone else who drank from the whiskey bottle had a similar reaction and that she would have heard if they did.

**Analysis**

Appellant contends that her lack of memory and irrational behavior are evidence that she involuntarily consumed an unknown drug. She further contends that her testimony that she must "have been drugged" is sufficient to warrant the involuntary intoxication instruction. We disagree.

This case is very similar to *Peavey v. State*. 248 S.W.3d 455 (Tex. App.—Austin 2008, no pet.). Peavey was convicted of driving while intoxicated (DWI). *Id.* at 458. Peavey testified that he drank a glass of wine with his boss's son prior to his arrest. *Id.* He claimed to have no memory from the time he drank the wine until he woke up in jail. *Id.* Peavey further claimed that his boss's son must have drugged the glass of wine. *Id.* at 462. In support of his assertion, Peavey pointed to evidence that his eyes were dilated and slow to respond to light stimulus, which is an abnormal reaction for someone intoxicated solely by alcohol. *Id.* at 461. He further relied on evidence demonstrating a rivalry between the boss's son and himself as a motive. *Id.* Peavey requested an instruction on the voluntariness of his actions, which the trial court denied. *Id.* at 459. On appeal,

4

the court determined that Peavey did not produce evidence warranting a voluntariness instruction. *Id.* at 465. The court held that Peavey's claim that he might have been drugged was unsupported by the evidence and "mere speculation." *Id.* As a result, the trial court did not err in denying the instruction. *Id.* at 465-66. Other courts have similarly held that speculation that a defendant claims to have been drugged is insufficient to warrant an involuntary intoxication instruction. *See Lewis v. State*, No. 05-12-00837-CR, 2013 WL 5888117, at *8 (Tex. App.—Dallas Oct. 31, 2013, pet. ref'd) (op., not designated for publication); *Harris v. State,* No. 02-09-00177-CR, 2011 WL 754396, at *4 (Tex. App.—Fort Worth March 3, 2011, no pet.) (mem. op., not designated for publication); *see also Alexander v. State*, No. 03-01-00263-CR, 2002 WL 436993, at *3 (Tex. App.—Austin March 21, 2002, no pet.) (op., not designated for publication).

Based on our review of the record, there is no evidence Appellant was involuntarily intoxicated or drugged against her will. The evidence showed that Appellant had been drinking beer and drank whiskey at the crawfish boil. Appellant testified that the whiskey "had to have been drugged." However, Appellant cannot identify who would have drugged her or what drug may have been placed in the whiskey. Furthermore, there is no evidence that anyone else who drank from the bottle suffered a similar reaction. At best, Appellant's self-serving testimony amounts to mere speculation and not evidence. *See Harris*, 2011 WL 754396, at*4; *Peavey*, 248 S.W.3d at 465. As in *Peavey*, such testimony is insufficient to warrant an instruction on involuntary intoxication.

Even if we were to speculate that Appellant's intoxication was induced upon her involuntarily, there is no evidence that it caused a severe mental defect that rendered Appellant without the ability to realize that her conduct was wrong. An "affirmative defense" requires the accused to bear both the burden of production and the burden of persuasion. TEX. PENAL CODE ANN. § 2.04 (West 2011); *Zuliani v. State*, 97 S.W.3d 589, 594 n. 5 (Tex. Crim. App. 2003); *Alford v. State*, 866 S.W.2d 619, 621 (Tex. Crim. App. 1993). The "severe mental defect" component of this affirmative defense limits its availability if there is no evidence to support that element. *See Coble v. State*, 871 S.W.2d 192, 201 (Tex. Crim. App. 1993). Appellant failed to produce any evidence, medical or otherwise, that she was suffering from insanity due to involuntary intoxication.

5

Based on the record before us, we hold that Appellant was not entitled to a jury instruction on involuntary intoxication and the trial court did not err by refusing Appellant's requested jury instruction. We overrule her sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered February 6, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 6, 2019**

**NO. 12-18-00103-CR**

**KRYSTAL DAWN MILLER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CR17-0650-392)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*